## STATE OF CONNECTICUT *v.* ANTHONY ARENA
## (14933)

Callahan, Borden, Berdon, Norcott and Katz, Js.

Argued April 21—decision released August 15, 1995

*Martin Zeldis*, assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kimberly Graham*, former assistant state's attorney, for the appellee (state).

NORCOTT, J. The principal issue in this certified appeal is whether the trial court improperly denied the defendant's request to charge the jury on a lesser included offense. The defendant, Anthony Arena, was convicted after a jury trial of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4)[1] and

---

[1] General Statutes § 53a-134 provides in relevant part: "Robbery in the first degree: Class B felony. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime. . . ."

larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[2] The defendant appealed from the judgment of conviction and the Appellate Court affirmed the judgment of the trial court. *State* v. *Arena*, 33 Conn. App. 468, 636 A.2d 398 (1994). We granted the defendant's petition for certification to appeal,[3] and now affirm the judgment of the Appellate Court on different grounds.

As stated by the Appellate Court, the jury reasonably could have found the following facts. "On August 13, 1991, at about 7:30 p.m., the defendant entered a Chucky's convenience store in Hartford. Two employees, Dhanwantie Ramdayal and Alexander Smolkin, were standing behind the counter. The defendant picked out a candy and took it to the counter. He then told Ramdayal to 'put it in a bag.' Ramdayal was confused by the defendant's statement and asked, 'Put what in a bag?' The defendant answered, 'Put all the money in a bag.' As the defendant said that, he placed an opaque plastic shopping bag on the counter. His hand was at the top of the bag and he gripped an object inside the bag. He pointed the object in the bag at Ramdayal. Ramdayal testified that she thought it looked like a gun and that it was round and about fifteen or sixteen inches long.

---

[2] General Statutes § 53a-123 provides in relevant part: "Larceny in the second degree: Class C felony. (a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[3] The certified questions are as follows: (1) "Did the Appellate Court properly hold that the defendant's request to charge on a lesser included offense of robbery in the second degree was inadequate because an appropriate instructional request had not been made in that the defendant had cited to only three specific authorities, all revolving around the requirements of *State* v. *Whistnant*, 179 Conn. 576 [427 A.2d 414] (1980), in the text of his request to charge?" and (2) "If the defendant's request to charge on second degree robbery was adequate, was the defendant prejudiced when the trial court refused to charge on second degree robbery after permitting the defendant to argue on this lesser included offense?" *State* v. *Arena*, 229 Conn. 918, 644 A.2d 914 (1994).

"As the defendant was asking for the money, Smolkin walked toward the phone. The defendant then said to Smolkin, 'Don't call the police' and 'Don't play cool.' Smolkin turned and saw the object in the bag in the defendant's hand. Smolkin could see the shape of the object and thought it looked like a long barrelled weapon. Smolkin further testified that in trying to make light of the situation during the robbery he joked, 'Is that a real gun?' and 'Is it a real robbery?'

"Ramdayal was nervous and had difficulty opening the cash register. The defendant told her to open the register fast and 'hurry up' and 'nothing will happen.' When she opened the register, she withdrew the cash from the drawer. She did not know the precise amount of money she withdrew, but she knew it was less than $100, because it is the store's policy not to have more than $100 in the drawer. She extended her hand with the money in it and the defendant snatched the money out of her hand. The defendant turned and left the store quickly, and Ramdayal called the police. The incident was taped by security cameras and the tapes were shown to the jury and admitted into evidence." Id., 471–72.

At trial, "[t]he defendant filed a request to charge asking the court to instruct the jury that it could find the defendant guilty of robbery in the second degree as a lesser included offense of robbery in the first degree. Out of the presence of the jury, the trial court stated [that] it would charge on robbery in the second degree and robbery in the third degree as lesser included offenses. The defendant explained to the jury in his closing argument that they could find the defendant guilty of robbery in the second degree.[4] The prosecution also argued robbery in the second degree to the jury.

[4] The defendant stressed that if the jury believed that the defendant was the perpetrator, the crime would be robbery in the third degree because it was highly speculative that the defendant displayed or threatened to use what he represented was either a firearm, dangerous instrument or deadly

"Before the charge to the jury, however, the trial [court] informed the parties that after reviewing the cases and statutes he had decided not to charge on robbery in the second degree as a lesser included offense. Defense counsel raised his concern that he had already told the jury in his closing argument that they could find the defendant guilty of robbery in the second degree. In light of this, the trial court offered to [give] a curative charge to the jury and also offered to allow defense counsel to address the jury for the purpose of clarifying any confusion regarding the lack of a charge on robbery in the second degree. Defense counsel declined, stating he was concerned that calling attention to it would only further prejudice his client.[5] The trial [court] then charged the jury as to robbery in the first degree and robbery in the third degree as a lesser included offense, without charging on robbery in the second degree as a lesser included offense and without referring to the parties' closing arguments that included robbery in the second degree." Id., 478. The defendant duly excepted to the charge.

weapon. "We don't concede the defendant is the person who committed this robbery. Remember that. We don't concede that We think there's reasonable doubt. If you disagree with me, there's no robbery 1 here, there's no robbery 2 here; yes, there is robbery 3."

[5] The following exchange occurred:

"[Defense Counsel]: I think [this] has [had] a substantial prejudicial effect on my client, [in] that I was given permission to argue robbery 2 to the jury, which I did.

"The Court: Understood. And I think the record's clear. . . . Now, as I indicated . . . that disturbs me, and it's not the defense's doing. And if you wish to address the jury—this is highly unusual—I'd give you leave to do so, because you did argue on robbery 2. . .

"[Defense Counsel]: . . . I do not want to highlight it in that way to the jury, and so I do not want to address the jury as such

"The Court: All right. Now, I was considering mentioning it to the jury, and then I thought it might be better—everything might be better left unsaid. If you wish the Court to give any kind of instruction relevant to that, suggest it, and if it's reasonable I will do so.

"[Defense Counsel]: Just for the record, I don't believe that the prejudice to my client can be eliminated by any instruction that tried to deal with this question, so, for that reason, I'm not asking that the Court do that."

On appeal, the defendant claims that the trial court improperly refused to grant his request for an instruction to the jury on the crime of robbery in the second degree, General Statutes § 53a-135 (a) (2),[6] as a lesser included offense of the crime of robbery in the first degree, General Statutes § 53a-134 (a) (4). See footnote 1. Additionally, the defendant claims he was prejudiced by the trial court's permitting counsel to argue concerning robbery in the second degree to the jury and then failing to instruct the jury on that charge.

I

We first address the defendant's claim that the trial court improperly denied his request to charge[7] the jury

---

[6] General Statutes § 53a-135 provides in relevant part: "Robbery in the second degree: Class C felony. (a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

[7] The defendant's requested instruction regarding robbery in the second degree read as follows:

" 'A. Proposed Instructions

" '1. Robbery in the Second Degree

" 'Robbery in the second degree as relevant as a lesser included offense in the instant matter is found in our statutes at [§] 53a-135 (a) (2) of the Connecticut General Statutes and provides that if in the course of the commission of the crime or the immediate flight therefrom the perpetrator displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument he may be found guilty of the crime of robbery in the second degree. Deadly weapon means [text of § 53a-3 (6)]. Dangerous instrument means [text of § 53a-3 (7) as relevant]. If you find that the defendant has been proven guilty beyond a reasonable doubt of each and every element of this crime, then you should find him guilty. If you find that the defendant has not been proven guilty beyond a reasonable doubt of each and every element of this crime, then you must find him not guilty of robbery in the second degree.

" '2. Robbery in the Third Degree

* * *

" 'B. Legal Authority

" 'Borden and Orland, Connecticut Practice Book, Vol. 5, Criminal Jury Instructions §§ 13.7–13.9; *State* v. *Whistnant,* [supra, 179 Conn. 583]; *State* v. *Smith*, 185 Conn. 63, 75–79 [441 A.2d 84] (1981).

on robbery in the second degree, as a lesser included offense of robbery in the first degree.

"There is no fundamental constitutional right to a jury instruction on every lesser included offense . . ." rather the right to such an instruction is purely a matter of our common law. *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980). "A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588.

In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez*, 219 Conn. 16, 22–23,

" 'C. Factual Basis

" 'The testimony from both clerk witnesses was that the perpetrator carried with him a plastic shopping bag which they could not see through and that at the onset of the robbery the perpetrator placed this bag on the store counter and demanded money. While both clerks stated that they thought the bag contained a firearm neither clerk saw any portion of the object they believed was contained inside the bag and both clerks testified that at no time did the perpetrator verbally threaten the use of a firearm or any other weapon that may have been contained inside the bag, and that at no time did the perpetrator display or discharge the firearm or other weapon that may have been contained inside the bag.' " *State* v. *Arena,* supra, 33 Conn. App. 480–81 n.5.

592 A.2d 149 (1991); *State* v. *Herring*, 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "[T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 68, 621 A.2d 728 (1993). On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if "we cannot as a matter of law exclude [the] possibility" that the defendant is guilty only of the lesser offense. *State* v. *Falby*, 187 Conn. 6, 30, 444 A.2d 213 (1982).

The trial court concluded that the defendant was not entitled to a jury instruction on robbery in the second degree because his request to charge failed to meet the third and fourth prongs of the *Whistnant* test. The Appellate Court concluded, however, that the defendant's request failed to satisfy the first prong of *Whistnant*.[8] *State* v. *Arena*, supra, 33 Conn. App. 478. In this appeal, the defendant argues that his request satisfied all four prongs of *Whistnant*.

## A

Under the first prong of *State* v. *Whistnant*, supra, 179 Conn. 588, we must determine whether the request to charge constituted an appropriate instruction. The Appellate Court concluded that the defendant's request to charge was inadequate because it failed to meet the

[8] Because the Appellate Court concluded that the defendant's request failed the first prong of *Whistnant*, the Appellate Court made no analysis of the remaining three *Whistnant* prongs. In a footnote, however, the Appellate Court parenthetically noted that the fourth prong of *Whistnant* also had not been met. *State* v. *Arena*, supra, 33 Conn. App. 482–83 n.6.

standards of Practice Book § 854. The defendant claims that the Appellate Court improperly reasoned that the legal authority cited by the defendant referred only to the procedure that must be followed before a requested charge is given and did not provide the trial court with the appropriate factual and legal basis required in a request to charge. *State* v. *Arena*, supra, 33 Conn. App. 479–81. We agree with the defendant.

A trial court has no independent obligation "to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence . . . ." *State* v. *Preyer*, 198 Conn. 190, 198 n.9, 502 A.2d 858 (1985). Rather, it is the responsibility of the parties to help the court in fashioning an appropriate charge. See *State* v. *McIntosh*, 199 Conn. 155, 158–61, 506 A.2d 104 (1986); *State* v. *Whistnant*, supra, 179 Conn. 583. We repeatedly have refused to find impropriety in the failure to give a charge that was not requested. See, e.g., *State* v. *Pollitt*, 205 Conn. 61, 83, 530 A.2d 155 (1987); *State* v. *Ostroski*, 201 Conn. 534, 557–58, 518 A.2d 915 (1986); *State* v. *Hancich*, 200 Conn. 615, 622, 513 A.2d 638 (1986); *State* v. *McIntosh*, supra, 158–61.

A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book § 854. *State* v. *Hall*, 213 Conn. 579, 591, 569 A.2d 534 (1990); *State* v. *Ostroski*, supra, 201 Conn. 556–58; *State* v. *McIntosh*, supra, 199 Conn. 158–61. Section 854 provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply . . . ."

"While this court does not favor unyielding adherence to rules of procedure where the interests of justice are

thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 854] is neither unreasonable nor novel." (Citation omitted; internal quotation marks omitted.) *State* v. *Hall*, supra, 213 Conn. 593.

We are persuaded that the defendant submitted an adequate instruction to the trial court. First, the defendant's request contained "a complete statement of the essential facts [that] would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Killenger*, 193 Conn. 48, 57, 475 A.2d 276 (1984); see also *State* v. *Ostroski*, supra, 201 Conn. 558; *State* v. *McIntosh*, supra, 199 Conn. 160. Unlike cases in which we have found the requested instruction's factual basis to be inadequate; see, e.g., *State* v. *Hall*, supra, 213 Conn. 591–92 (defendant's request made only one reference to facts that did not relate specifically to offense in question); *State* v. *Ostroski*, supra, 558 (defendant's "summary request" contained no facts at all); see also *State* v. *Payne*, 31 Conn. App. 370, 378, 625 A.2d 231, cert. denied, 227 Conn. 901, 630 A.2d 73 (1993); *State* v. *Dedrick*, 24 Conn. App. 518, 524, 589 A.2d 1241 (1991); the defendant's instruction drew the trial court's attention to the relevant facts that arguably would justify the requested charge. The defendant's request discussed the testimony of both clerks wherein they stated that they had not seen the contents of the bag, supporting an inference that something other than a firearm was in the bag. See footnote 7. We conclude that this discussion of the applicable facts, while not exhaustive, satisfies Practice Book § 854.

Second, we conclude that the defendant's statement of the substantive principles supporting the requested instruction were adequate. See *State* v. *McIntosh*, supra, 199 Conn. 160 (defendant's request inadequate because it

contained "nothing more than a skeletal list of statutory subsections"). As authority for his request to charge on robbery in the second degree as a lesser included offense of robbery in the first degree, the defendant cited 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (1986) §§ 13.7 through 13.9, *State* v. *Whistnant,* supra, 179 Conn. 576, and *State* v. *Smith,* 185 Conn. 63, 75–79, 441 A.2d 84 (1981). Although *Whistnant,* in and of itself, does not provide the basis for charging any claimed lesser included offense; see *State* v. *McIntosh,* supra, 158–61; and *State* v. *Smith,* supra, 77–78, merely sets forth the general procedure that must be followed to request a lesser included offense, we do not regard as fatal the defendant's failure to cite specific authority relating to robbery in the second degree because, it was not settled whether § 53a-135 (a) (2) was a lesser included offense of § 53a-134 (a) (4). The state subscribes fault in the defendant's failure to cite *State* v. *Harris,* 189 Conn. 268, 274–76, 455 A.2d 342 (1983), and *State* v. *Kolinsky,* 182 Conn. 533, 543–44, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981). Although both cases concerned robbery, neither case resolves the question of whether § 53a-135 (a) (2) is a lesser included offense of § 53a-134 (a) (4).

Moreover, the trial court was aware of the defendant's request prior to formulating its charge and thus was afforded the time to scrutinize the requests and investigate the relevant case law. Not only had this issue been discussed in chambers, but the trial court itself had indicated that it would give the requested charge. As a result, we are convinced that the trial court knew " 'the precise point to which the defendant wished to call attention.' " *State* v. *McIntosh,* supra, 199 Conn. 161.

On the basis of this record, we conclude that the defendant's request to charge had advised the trial court

adequately of the legal basis for the charge. Accordingly, we conclude that the defendant's requested charge was appropriate and satisfied the first prong of *Whistnant*.

## B

Having determined that the defendant adequately presented his request to charge, we next must determine whether an instruction on § 53a-135 (a) (2) was warranted under the circumstances of this case. In order to satisfy the third prong of *Whistnant* there must be some evidence on the record to justify a conviction of the lesser offense. The defendant argues that the ambiguity of the contents of the opaque bag satisfies this prong. We disagree and consequently do not address the second and fourth prongs of *Whistnant*.

In *State* v. *Rasmussen*, supra, 225 Conn. 65–73, we reviewed the evidence required to satisfy the third prong of the *Whistnant* test. We held that "there must be sufficient evidence, introduced by either the state or the defendant, or by a combination of their proofs, to justify a finding of guilt of the lesser offense." Id., 67–68. We reviewed our previous cases, such as *State* v. *Falby*, supra, 187 Conn. 30, and expressly rejected the proposition that a defendant is entitled to instructions on lesser included offenses based on merely theoretical or possible scenarios. *State* v. *Rasmussen*, supra, 66–67.

The defendant contends that Smolkin's testimony that the bag could have contained something other than a firearm is sufficient evidence to justify a finding of guilt as to robbery in the second degree. The only mention that the bag could have contained an object other than a firearm was upon cross-examination, when the defendant's counsel asked: "Could the object in the bag have been a club." Smolkin replied: "The answer is yes." We are not persuaded that, on this record, this sole exchange satisfies the third prong of *Whistnant*.

The state only had to prove that the defendant *repre-sented* by his conduct that he had a firearm. The actual contents of the bag are irrelevant. There is no evidence that the defendant represented by his words or conduct that he had something other than a firearm. Indeed, both witnesses testified that by the way the defendant held the object and his conduct he represented that the object was a "gun," "rifle" or "shotgun." The defendant did not introduce evidence to contradict this testimony. Thus, a victim's acknowledgment that it, in fact, could have been something other than a firearm, namely, a bludgeon or other dangerous instrument, is not evidence that the defendant represented that the object he was carrying was something other than a firearm. See *State* v. *Kolinsky*, supra, 182 Conn. 543–44.

Because we conclude that neither the state nor the defendant produced any evidence that the defendant represented the weapon as something other than a firearm, we conclude that there was insufficient evidence to justify the defendant's request for instructions on robbery in the second degree pursuant to § 53a-135 (a) (2), as a lesser included offense of robbery in the first degree pursuant to § 53a-134 (a) (4). Consequently, although we agree with the Appellate Court that under the circumstances of this case the defendant was not entitled to the requested instruction, we do so on different grounds.

## II

The defendant also claims that he was prejudiced by the trial court's decision not to charge the jury on robbery in the second degree after the defendant had emphasized it in his closing argument. The defendant argues that, under the law of the case doctrine, once a party relies on the trial court's ruling, the court ordinarily cannot reverse itself, even if its previous ruling was

improper, and even if it offers to mitigate any prejudice incurred in reliance thereon. We disagree.

"The law of the case . . . is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Citations omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 99–100, 439 A.2d 1066 (1982); see *Miller* v. *Kirshner*, 225 Conn. 185, 191, 621 A.2d 1326 (1993); *Carothers* v. *Capozziello*, 215 Conn. 82, 107, 574 A.2d 1268 (1990). Because the law of the case does not limit a trial court's powers, we review the trial court's decision to change a prior decision as we would any other ruling. See part I of this opinion (trial court's decision not to charge jury on robbery in second degree proper).

Nonetheless, the defendant claims that he was prejudiced by the trial court's ruling because he had argued second degree robbery during his closing argument. We conclude, however, that the defendant waived this claim when he refused the trial court's offer to provide a curative instruction and a second opportunity to address the jury.

It is axiomatic that our system of law encourages the conservation of judicial time and resources. *Curry* v. *Burns*, 225 Conn. 782, 790, 626 A.2d 719 (1993); *State* v. *Ellis*, 197 Conn. 436, 466–67, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). Accordingly, a trial

court is vested with the power to take corrective action to counteract any prejudice that might result during trial and to avoid unnecessary retrials. See *State* v. *Deleon,* 230 Conn. 351, 368 n.26, 645 A.2d 518 (1994); 46 Am. Jur. 2d, Judges § 42 (1994). "It is peculiarly within the province of a trial court to weigh such factors and arrive at a fair solution." *State* v. *Hawthorne,* 176 Conn. 367, 373–74, 407 A.2d 1001 (1978). Every reasonable presumption will be given in favor of the trial court's ruling because the trial court, which has a firsthand impression of what the jury has been told, is in the best position to evaluate the critical question of whether the defendant has been unduly prejudiced.

In the present case, the trial court offered to counteract any prejudice that might have resulted through curative instructions and the opportunity for the defendant's counsel to readdress the jury. The defendant, as a tactical matter, declined both. We cannot and need not speculate on the possible effect of the curative actions that the defendant rejected. We are persuaded that the options given by the trial court were suitable remedies to cure any possible prejudice.

Moreover, the defendant's closing arguments merely alluded to robbery in the second degree, arguing instead that if the jury believed that the defendant was the perpetrator, it could find him guilty of robbery in the third degree because it was highly speculative that the defendant displayed or threatened to use what he represented was either a firearm, dangerous instrument or deadly weapon. See footnote 4. We conclude, therefore, that the defendant was not unfairly prejudiced by the trial court's decision not to instruct the jury on robbery in the second degree, after he argued concerning robbery in the second degree in his closing argument.

The judgment is affirmed.

In this opinion the other justices concurred.