[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
The defendant, Maurice Blackwell (hereinafter the defendant), has moved this court, pursuant to the fourth, fifth, sixth andfourteenth
amendments to the constitution of the United States, article first, § 8, of the constitution of Connecticut and Practice Book §41-12, to suppress as evidence any identification of the defendant as a result of a photo array, lineup or showup, by the Waterbury Police Department, including any testimony or evidentiary leads derived therefrom.
The defendant based his motion to suppress the identification evidence on the following:
 1. The identification procedure employed by the police was unreasonable and impermissibly suggestive;
2. The "photo array" arranged by the Waterbury Police in this case was composed so as to be highly prejudicial and unfair to the defendant; CT Page 4391
 3. The identification was unreliable as that term is defined under facts set forth in Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977);
 4. That improper, suggestive and prejudicial comments were made to the witness by the police or other persons during the identification process; and
 5. That said "photo array" was illegal and in violation of the defendant's constitutional rights under the fourth, fifth, sixth and fourteenth amendments of the constitution of the United States.
The court heard testimony and received evidence at a hearing held on the motion on March 18, 2002. The court orally ruled on this motion on March 19, 2002, denying the motion to suppress. This is an articulation of that ruling.
 I FACTS
The following facts were presented at the March 18, 2002 hearing. On August 24, 2000, at approximately 7:00 p.m., Cassandra Norris was with a person named Tawana, who is identified as the deceased, Alonta Gaymon, and they were sitting in front of 261 Grove Street, Waterbury, Connecticut. While seated, Ms. Norris observed two black males in their twenties walk up Grove Street from the area of Willow Street, walk in front of them and then move across the street and sit on the stairs, as identified in State's Exhibit #5. Ms. Norris was further directed to the two males when Tawana indicated to her that she had been robbed by one of the males located across the street. Ms. Norris then noticed one of the black males coming across the street. Ms. Norris testified that she had an opportunity to observe him; it was light outside, so she had no problem seeing. She described the person as a black male, light skinned, and wearing a denim outfit (jacket and pants) and a funny looking hat. As he stepped on the sidewalk, Ms. Norris was looking at the person's face. Ms. Norris indicated that this person was approximately two feet from her. She observed this individual open up his jacket and pull out a long gun, not a pistol. Once she observed this person, observed the gun, and then ran to her right behind the building, she heard Tawana say "don't shoot" and then heard a gunshot. She identified the defendant, in court, as the person she saw walk across the street and pull out the gun.
Ms. Norris was brought to the Waterbury Police Department where she gave a written statement, State's Exhibit #1, indicating what she had CT Page 4392 observed. At the conclusion of the written statement, Ms. Norris was presented with a photo array, consisting of eight similar looking males. (State's Exhibit #2.) Ms. Norris identified photo number eight, a photo of the defendant, as the person who walked across the street and pulled the gun from inside his jacket.
Detective O'Loughlin presented Ms. Norris with the photo array, which was composed by Detective Balnis. Ms. Norris signed the side of photo number eight and also signed her statement. Ms. Norris testified that she indicated to Detective O'Loughlin, after selecting the defendant's photograph, that there were three photos in the array who were individuals that she recognized from living in Waterbury. Ms. Norris signed the side of photo number eight and also signed her statement.
Although Ms. Norris recognized three individuals in the photo array, she testified that she did not know these individuals personally and she did not even know their names. The testimony did not present coaching or suggestion on the part of the police in assisting Ms. Norris in the selection. Ms. Norris made an in-court identification of the defendant as the person she saw walk across the street, approach her and Tawana, and pull the gun from his jacket.
 II LAW AND DISCUSSION
"The due process clause of the fourteenth amendment to the United States constitution requires the exclusion of identification evidence — including . . . an in-court identification and testimony concerning a pretrial photographic identification — when the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. Simmons v. United States, 390 U.S. 377, 384,88 S.Ct. 967,19 L.Ed.2d 1247 (1968) . . . State v. Biggs, 13 Conn. App. 12, 17,534 A.2d 1217 (1987), cert. denied, 207 Conn. 801, 540 A.2d 73 (1988)." (Internal quotation marks omitted.) State v. Streater, 36 Conn. App. 345,362, 650 A.2d 632 (1994), cert. denied, 232 Conn. 908, 653 A.2d 195
(1995); see also State v. Gagnon, 18 Conn. App. 694, 701, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989)
For the court to determine whether a pretrial identification procedure violated a defendant's due process rights, the court must review it on a case by case basis in light of the following two prong test: "[f]irst, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on CT Page 4393 an examination of the totality of the circumstances." (Internal quotation marks omitted.) State v. Ortiz, 252 Conn. 533, 553, 747 A.2d 487 (2000);State v. Streater, supra, 36 Conn. App. 362, quoting State v. Howard,221 Conn. 447, 453, 604 A.2d 1294 (1992)
As to the first prong, "[w]hether such an identification procedure is unnecessarily suggestive, depends on the facts and circumstances of each case. State v. Findlay, 198 Conn. 328, 337-38, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)." (Internal quotation marks omitted.) State v. Gagnon, supra, 18 Conn. App. 702, quoting State v. Arroyo, 13 Conn. App. 687, 690, 539 A.2d 581, cert. denied, 208 Conn. 8051 545 A.2d 1103 (1988). The essential inquiry is whether the viewing by the witness was impermissibly suggestive and unreliable.
"A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. State v. Hinton, 196 Conn. 289, 293,493 A.2d 836 (1985)." (Internal quotation marks omitted.) State v.Arena, 33 Conn. App. 468, 474, 636 A.2d 398 (1994), aff'd, 235 Conn. 67,663 A.2d 972 (1995); see also State v. Streater, supra, 36 Conn. App. 363;State v. Payne, 219 Conn. 93, 106, 591 A.2d 1246 (1991)
With this understanding of the law, the court reviews the testimony and evidence addressing the identification procedure by Ms. Norris that was utilized by the Waterbury Police Department in the case before the court.
The defendant's claim is that, the Waterbury Police (Detective O'Loughlin) procedure of not asking Ms. Norris prior to the viewing of the array if there were photographs of individuals that she was familiar with from the community, violated due process and, therefore, was unnecessarily suggestive.
The testimony of Detective O'Loughlin did not establish any procedure in the presentation of the photo array and subsequent identification that would indicate an impermissibly suggestive procedure.
The evidence and testimony presented as to the photo array (State's Exhibit #2), and the composition of that array does not present evidence that it was unnecessarily or impermissibly suggestive to cause a misidentification.
In fact, the defendant does not claim that the pretrial photographic identification procedure used by the Waterbury Police Department on this matter was unnecessarily suggestive. The court finds that the presented CT Page 4394 photographs in the photo array were not suggestive.
The court has also had an opportunity to view the photo array. (State's Exhibit 2.) In reviewing this array, the court finds that the photographs substantially represent the general description of the individual given to police by the witness. The eight photographs are of black males, all approximately within the same age. These individuals look sufficiently alike so as not to be overly suggestive. The court is familiar with the factors it must consider in weighing identification evidence. Based on the credible evidence presented, the court does not find the photo array overly suggestive.
"The presentation of an array of several photographs to witnesses, including that of the suspect, does not constitute an impermissibly suggestive pretrial identification procedure in the absence of any unfairness or other impropriety in the conduct of the exhibit." (Internal quotation marks omitted.) State v. Sparks, 39 Conn. App. 502, 511,664 A.2d 1185 (1995); see also State v. Outlaw, 216 Conn. 492, 582 A.2d 751
(1990)
The lack of a request to Ms. Norris inquiring if there were familiar individuals in the array does not make the procedure unnecessarily suggestive. There is no requirement that a police officer must inquire of a witness as to whether he or she recognizes any of the individuals in the photo array.
As previously stated, the defendant, in seeking to suppress the identification evidence, bears the initial burden of proving that the identification resulted from an unconstitutional procedure. State v.Streater, supra, 36 Conn. App. 363; State v. Payne, supra, 219 Conn. 106.
The court concludes that the defendant has failed to establish that the photographic array was impermissibly suggestive or that the procedure utilized by the police was unnecessarily suggestive. In light of this finding, the court need not address the reliability of the in court identification. However, the court will discuss it. If it were found that an identification resulted from an unduly suggestive procedure, it may still be reliable. The court "must weigh the corrupting effect of the suggestive procedure in light of certain factors." (Internal quotation marks omitted.) State v. Askew, 55 Conn. App. 34, 39, 739 A.2d 274, cert. denied, 251 Conn. 918, 740 A.2d 866 (1999); State v. Wooten,227 Conn. 677, 687, 631 A.2d 271 (1993)
The court has found that the identification procedures were not unnecessarily suggestive. The court considered the out of court identification and the in court identification and found them reliable CT Page 4395 because of factors presented at the hearing, which included the opportunity the witness had to view the defendant at the time of the crime, the witness' degree of attention, the consistency of the witness' prior description of the person she saw approaching "Tawana" and the level of certainty at the identifications from the time between the incident and the subsequent identification. The court considered all of those factors in determining the reliability of the identifications.
The court, after consideration of the testimony presented, the arguments of the attorneys and the case law relevant to this issue, finds that the procedures utilized by the Waterbury Police Department in the preparation of and presentation to the witness were not conducted unfairly or as an unnecessarily suggestive procedure which would give rise to the very substantial likelihood of irreparable misidentification.
"An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification." (Internal quotation marks omitted.) State v. Ortiz, supra, 252 Conn. 553.
 III RULING
The court finds for all the reasons presented that the defendant has not sustained his burden to establish that the identification procedure was unreasonable or impermissibly suggestive and that said procedure led to the misidentification of the defendant.
The defendant's motion to suppress identification evidence is DENIED.
 ___________________, J. FRANK M. D'ADDABBO, JR.