## STATE OF CONNECTICUT *v.* PATRICK CORBIN
### (SC 16517)
### (SC 16518)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued January 18—officially released July 9, 2002

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan K. Alexander*, former supervisory assistant state's attorney, for the appellant in Docket No. SC 16517, appellee in Docket No. SC 16518 (state).

*James B. Streeto*, deputy assistant public defender, for the appellee in Docket No. SC 16517, appellant in Docket No. SC 16518 (defendant).

*Opinion*

SULLIVAN, C. J. The defendant, Patrick Corbin, was convicted, after a jury trial, on four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2)[2] and one count of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21.[3] The defendant appealed from the judgment of conviction to the Appellate Court, claiming that the trial court improperly had: (1) denied his motion to suppress a confession he

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[3] General Statutes (Rev. to 1995) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

had made to the police; (2) failed to instruct the jury as requested by the defendant regarding its role in evaluating the credibility of his confession; (3) admitted into evidence for substantive purposes a prior inconsistent statement made by a witness; (4) refused to disclose all of the psychiatric records of a witness and all of the notes of an investigating police officer; (5) denied the defendant's motion for a judgment of acquittal on the charge of kidnapping in the first degree because of insufficiency of the evidence; and (6) rejected his request to instruct the jury on unlawful restraint in the first degree and unlawful restraint in the second degree as lesser included offenses of kidnapping in the first degree. The Appellate Court affirmed in part and reversed in part the judgment of the trial court. *State* v. *Corbin*, 61 Conn. App. 496, 499, 765 A.2d 14 (2001).

We granted the defendant's petition for certification to appeal, limited to the following issues: "1. Did the Appellate Court properly reject the defendant's claim that the trial court improperly failed to give his requested instruction regarding the reliability of his confession?" and "2. Did the Appellate Court properly conclude that, with respect to the charge of kidnapping in the first degree, the defendant was not entitled to an instruction on the lesser included offenses of unlawful restraint in the first and second degree?" *State* v. *Corbin*, 256 Conn. 911, 772 A.2d 1125 (2001). We also granted the state's petition for certification to appeal, limited to the issue of whether the Appellate Court properly concluded that the victim's statement regarding fellatio during the sexual assault was not admissible under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 97 L. Ed. 2d 598 (1986); *State* v. *Corbin*, 256 Conn. 910, 722 A.2d 1124 (2001); and the state appealed from the judgment of the Appellate Court reversing the judgment of the trial court as to the conviction on one count of sexual

assault in the first degree. See *State* v. *Corbin*, supra, 61 Conn. App. 522. We affirm in part and reverse in part the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts. "On the evening of July 28, 1995, the six year old victim was fishing with two other children at a pond. The defendant, who was at the pond, saw the children and approached them. He offered to show the children a better fishing spot that was in a wooded area. The defendant led all of the children along a dirt trail into the wooded area. The victim continued to follow the defendant but, along the way, the other two children stopped because they noticed that the defendant was drinking beer and may have been intoxicated.

"Upon reaching an isolated part of the wooded area, the defendant sexually assaulted the victim. He placed his hand over her mouth and threatened that if she screamed, he would kill her. Thereafter, the defendant removed the victim's clothes and placed them in some bushes. He then vaginally penetrated the victim and also performed cunnilingus on her. During the assault, the victim pleaded with the defendant to stop hurting her, but he failed to comply. The entire attack lasted approximately forty-five minutes.

"Subsequently, two witnesses saw the defendant running out of the wooded area. Once out of that area, he went to his vehicle and drove off. Meanwhile, the victim went home and reported the incident to her mother, who immediately took her to a hospital. A police officer came to the hospital and took the victim's statement.

"The next day, Detective Edward Spyros went to the defendant's apartment and asked the defendant to accompany him to the police station. The defendant agreed to do so and at the police station confessed to assaulting the victim. Although audio and video

recording equipment was available at the police station, Spyros failed to utilize such equipment to capture the defendant's confession and, instead, simply reduced it to writing. The state then charged the defendant with the aforementioned crimes. At trial, the defendant requested that the court provide the jury with an instruction regarding the reliability of his confession, but his request was denied. The jury later found the defendant guilty on all counts." Id., 499–500. These appeals followed.

I

We first address the state's claim that the Appellate Court improperly concluded that the trial court improperly had permitted the state to introduce into evidence the victim's prior inconsistent written statement for substantive purposes. We agree with the state and reverse the decision of the Appellate Court as to this issue.

The following additional facts are relevant to our resolution of this claim. "After being sexually assaulted on July 28, 1995, the child victim went to a hospital emergency room with her mother. A police officer arrived at the hospital to interview the [victim] and conducted the interview [of the victim] in the presence of [her] mother. The [victim] recounted to the police officer what had happened regarding the sexual assault, and the police officer reduced her statement to writing. . . . Because the mother told the police officer that the victim could not read [or write], the police officer read the statement back to the [victim]. The police officer then had the mother sign the statement on behalf of the [victim]." Id., 511. The substance of the statement at issue was as follows: " 'I forgot to tell you that before he put his pee pee inside me, he made me suck his weiner . . . .' " Id.

"The defendant was later charged with and convicted of four counts of the crime of sexual assault in the first degree in violation of § 53a-70 (a) (2). As to count three, the defendant was convicted of violating the statute by forcing the [victim] to perform fellatio on him. When called to testify at trial, the [victim] testified about facts relating to counts one, two and four, but did not recall performing fellatio on the defendant." Id. The trial court, over objection by the defendant, admitted into evidence for substantive purposes the portion of the victim's statement regarding fellatio. Id.

On appeal to the Appellate Court, the defendant argued that because the victim's July 28, 1995 written statement to the police was unsworn and had been signed only by the victim's mother, the trial court should have not allowed the statement to be introduced for substantive purposes under *State* v. *Whelan*, supra, 200 Conn. 753. The state contended, to the contrary, that the victim's signature was not required under the circumstances of this case because the mother's signature was an adequate substitute in light of the fact that the six year old victim was unable to read or write and that the statement was admissible under the rule of *State* v. *Whelan*, supra, 753.[4] The Appellate Court concluded that, "under the circumstances of this case, the signing by the mother of the [victim's] statement on behalf of the [victim] fail[ed] to satisfy *Whelan*. The [trial] court, therefore, improperly admitted the [victim's] statement for substantive purposes concerning the third count of sexual assault in the first degree." *State* v. *Corbin*, supra, 61 Conn. App. 513.

Before turning to the merits of this claim, we address our standard of review. "The admissibility of evidence,

[4] The state based part of its argument on *State* v. *Woodson*, 227 Conn. 1, 21, 629 A.2d 386 (1993). *State* v. *Corbin*, supra, 61 Conn. App. 572. *Woodson*, however, applies only to electronically recorded statements. The present situation deals with a prior inconsistent written statement and therefore *Woodson* does not apply.

including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the . . . discretion of the trial court. See *State* v. *Alvarez*, 216 Conn. 301, 314, 579 A.2d 515 (1990) . . . ." *State* v. *Newsome*, 238 Conn. 588, 596, 682 A.2d 972 (1996). "[T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 791, 785 A.2d 573 (2001).

In *State* v. *Whelan*, supra, 200 Conn. 751–54, we abandoned the traditional view that a prior inconsistent statement of a nonparty witness is inadmissible hearsay if offered to prove the truth of the matters asserted therein and, therefore, is admissible only for impeachment purposes. In *Whelan*, we "recognized that a prior written inconsistent statement can be admitted for substantive purposes if the following conditions have been met: (1) the statement is signed by the declarant; (2) the declarant has personal knowledge of the facts stated; and (3) the declarant testifies at trial and is available for cross-examination." *State* v. *Alvarez*, supra, 216 Conn. 313; *State* v. *Whelan*, supra, 753; see also Conn. Code Evid. § 8-5 (1).[5] "In *State* v. *Almeda*, 211 Conn. 441, 452, 560 A.2d 389 (1989), we made it clear that the *Whelan* exception applied equally to unsworn statements." *State* v. *Hopkins*, 222 Conn. 117, 123, 609 A.2d 236 (1992).

Although the victim testified at trial and was subject to cross-examination, the defendant asserts that the

[5] Section 8-5 (1) of the Connecticut Code of Evidence incorporates the rule of *State* v. *Whelan*, supra, 200 Conn. 753, and incorporates the developments and clarifications of the *Whelan* rule that have occurred since *Whelan* was decided. Conn. Code Evid. § 8-5, commentary.

victim's statement lacked reliability because it was unsworn and unsigned. We disagree.

Contrary to the defendant's assertion, we have made it clear that "*Whelan* [does] not require that the declarant take an oath in order for the court to allow the admission of prior inconsistent statement into evidence for substantive purposes." *State* v. *Woodson*, 227 Conn. 1, 21, 629 A.2d 386 (1993). *Whelan* does, however, require that the declarant sign the written statement. The signature requirement is the only element of *Whelan* that is in dispute in the present case.

When we established the *Whelan* criteria, "[w]e believe[d] an exception to the hearsay rule [was] necessary to allow the trial court to admit for substantive purposes prior inconsistent statements given under prescribed circumstances reasonably assuring reliability." *State* v. *Whelan*, supra, 200 Conn. 752. We were, however, "unwilling to abrogate, without adequate precautions, the traditional view prohibiting [the admission of prior inconsistent statements for] substantive use." Id. The rule we created permits the admission of prior inconsistent statements for substantive purposes but "limit[s] substantive admissibility of prior inconsistent statements to situations where the likelihood of fabrication is slight and the risk of coercion, influence or deception is greatly reduced." Id. Accordingly, we adopted the three *Whelan* requirements as the benchmark for a reliable statement. Id.

The *Whelan* signature requirement, in particular, was created as a method to measure the reliability of a declarant's statement. Id. We concluded that although requiring a statement to be signed by the declarant is "not an absolute guaranty of reliability, it does provide significant assurance of an accurate rendition of the statement and that the declarant realized it would be relied upon." Id.

We are not abandoning the *Whelan* requirement that the declarant's signature is necessary to ensure a measure of reliability before a prior inconsistent statement is admissible for substantive purposes. We nevertheless conclude, however, that, under the circumstances of this case, it was reasonable for the trial court to conclude that the signature of the victim's guardian on the prior inconsistent statement given to a police officer was sufficient to meet the signature requirement of *Whelan* and to admit the statement into evidence.

Specifically, the trial court properly took into account the contemporaneous nature of the statement, the victim's age, her ability and the procedure used by the police officer in taking the statement. The statement: (1) was given by the victim, a six year old child, to a police officer on the same day as the incident; (2) was reduced to written format by the officer; (3) was read back to the victim by the police officer in the presence of the victim's mother; (4) was acknowledged by the minor victim; and (5) was signed by the mother of the minor victim because the victim could not read or write. The minor victim, the police officer and the mother of the victim all testified at trial and were subject to cross-examination pertaining to the procedure under which the statement was made.

On the basis of these considerations, we conclude that the trial court properly concluded that the mother's signature provided "significant assurance of an accurate rendition"; id.; and therefore, properly admitted the victim's prior inconsistent statement for substantive purposes, thus allowing the jury to determine for itself whether to credit the victim's testimony at trial, her prior inconsistent statement, or neither. Id.

We emphasize, however, that our decision in this case should not be construed to permit a guardian's signature as a substitute for a declarant's statement as

a general matter. The purpose of a declarant's signature is to "assur[e] . . . an accurate rendition" of the statement. Id. The determination of whether the signature of a guardian fulfills this purpose to meet the *Whelan* signature requirement is to be made on a case-by-case basis.

Accordingly, we reverse the judgment of the Appellate Court with respect to this issue.

## II

We next address the defendant's claim that the Appellate Court improperly concluded that the trial court's jury instruction adequately informed the jury of its distinct duty to evaluate the credibility of the defendant's confession and that no injustice resulted from the court's failure to give the defendant's requested jury instruction. See *State* v. *Corbin*, supra, 61 Conn. App. 507–508.

The defendant contends that, although the court instructed the jury on its duty to weigh the credibility of testimonial evidence, it failed to instruct the jury specifically concerning nontestimonial evidence, including his confession. The defendant argues that his requested instruction[6] regarding his confession was

[6] The defendant's requested jury instruction, pertaining to his confession, was as follows: "The defendant claims that the statement taken by the Bristol police department, which the state has attributed solely to him, is unreliable. The law permits you to consider the circumstances under which a statement was taken, including a lack of corroboration for the statement, the failure by the police to electronically record the statement, and the physical condition and mental capability of the defendant in determining the weight to be afforded to it. Accordingly, in this case it is your task to determine the sufficiency and the weight to be afforded to this statement in light of all attendant circumstances.

"Now, there is evidence of the presence of a video camera and other recording capability in the interrogation room in which the defendant was questioned at the Bristol police department. The defendant has further introduced evidence of the failure of the Bristol police department to electronically record this interview despite its ability to do so before having the defendant sign a written statement. The law neither requires corroboration of statements nor that statements be electronically recorded. However, the

necessary because his confession was a significant piece of evidence at trial. We disagree.

"When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the

---

law does provide that corroboration, or the lack thereof, is an attendant circumstance that may be considered in regard to the trustworthiness of a statement. Furthermore, our Supreme Court has held that the use of a recording is helpful in evaluating the circumstances of a statement and is desirable as an investigative tool which is be encouraged whenever feasible.

"As such, you may consider whether the decision of Detective Spyros not to record the interrogation or the circumstances under which the statement was taken, although he had the opportunity to do so, is one of the attendant circumstances bearing upon the reliability of the statement. If you find that the department failed to record the defendant's interrogation, you are not necessarily required to disregard the statement. However, if you determine that the statement attributed to the defendant is not sufficiently corroborated, by electronic or by other means, you may choose to disregard it in its entirety or in part.

"Furthermore, when determining the weight to be afforded to this statement, I also instruct you to consider whether the words employed in the statement truly reflect the language, thoughts, and opinions of the defendant or are, in fact, merely a reflection of the language thoughts and opinions of the police. In making your decision, you should reflect on the intelligence and mental capability of the defendant in comparison to the words and phrases used in the statement, as well as his reading ability, eyesight, psychiatric background and ability to comprehend before making a determination about whether exhibit 19 is reliable in whole or in part. You should then reflect upon the intelligence, training and experience of the officers of the Bristol police department involved in the taking of this statement. These circumstances are all relevant to your determination of the weight to be afforded to his particular evidence.

"As before, if you find, as a result of these circumstances, that the statement attributed to the defendant is unreliable or otherwise unworthy of belief, you may disregard it either in its entirety or in part."

instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *George B.*, supra, 258 Conn. 797.

"While the preliminary question of admissibility of a confession is for the court, the credibility and weight to be accorded the confession is for the jury." *State* v. *Vaughn*, 171 Conn. 454, 460–61, 370 A.2d 1002 (1976). As the Appellate Court recognized, this "rule does not require the court to give a particular instruction to the jury regarding the credibility of [the defendant's] confession simply because [the] confession was a significant piece of evidence. A court has discretion in determining what instructions a jury is to receive." *State* v. *Corbin*, supra, 61 Conn. App. 508; see, e.g., *State* v. *James*, 211 Conn. 555, 568, 560 A.2d 426 (1989). "The degree to which reference to the evidence may be [made] . . . lies largely in the discretion of the court." *State* v. *Vincenzo*, 171 Conn. 240, 244, 368 A.2d 219 (1976); *State* v. *James*, supra, 568.

With these principles in mind, we turn to the trial court's charge to the jury. In its instruction to the jury the court explained the difference between the jury's role and the court's role by giving the following instruction: "[O]ur functions are very distinct; yours, to find the facts and to ultimately determine the guilt or non-guilt of this defendant on six charges. Mine is totally separate and has to do with attempting to have the trial proceed without undue delay and to put before you only admissible evidence and to rule on objections . . . . If I say anything about any testimony, which will be very brief, if at all . . . it is not controlling on you just as the remarks of the attorneys relating to whatever evidence they referred to is not controlling on you. Your memory of what the testimony is is what controls. So you are the judge of the facts." After that statement, the court

instructed the jury on reasonable doubt and its duty of evaluating all of the evidence. The court stated: "What the law does require is [that] after hearing all the evidence, if there's something in that evidence or lack of evidence which leaves . . . a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted." Further, the court instructed that "[the] defendant, although accused, begins the trial with a clean slate with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against an accused. So the presumption of innocence alone is sufficient to acquit a defendant unless you, the jury, are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all of the evidence in the case. . . . " Further, as the Appellate Court pointed out, the court did instruct the jury at length on its role in evaluating the weight and credibility of the testimonial evidence. *State* v. *Corbin*, supra, 61 Conn. App. 509. Moreover, the court reminded the jury of its duty to evaluate and assess all of the evidence. It stated: "In determining whether or not the defendant was the person who was involved in the crimes charged, you should take into consideration all of the evidence . . . ."

Viewed as a whole, the jury instructions were correct in law and sufficient to guide the jury in its task of evaluating all of the evidence, including the defendant's confession. The requested instruction, although proper, was not necessary because it overemphasized one piece of evidence, namely, the confession.

Accordingly, we conclude that the trial court's instruction to the jurors fairly represented the case to the jury and that no injustice was done to either party. We affirm the decision of the Appellate Court in this regard.

## III

The defendant's final claim is that the Appellate Court improperly concluded that the defendant was not entitled to a jury instruction on unlawful restraint in the first degree and unlawful restraint in the second degree as lesser included offenses of kidnapping in the first degree.[7] *State* v. *Corbin*, supra, 61 Conn. App. 522. We disagree and affirm the decision of the Appellate Court.

This court repeatedly has recognized that "[t]here is no fundamental constitutional right to a jury instruction on every lesser included offense . . . ." *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980). Rather, the right to such an instruction is purely a matter of

---

[7] The instruction requested by the defendant was as follows: "The offense of unlawful restraint in the second degree is defined as follows: 'A person is guilty of unlawful restraint in the second degree when he restrains another person.'

"The difference between this offense and kidnapping in the second degree is that, in kidnapping, there must not only be a restraining but there must also be an abduction; and an abduction, you will recall, is a restraining with the specific intent to prevent liberation by the use or threat of physical force or intimidation. Here, however, there need only be a restraining, without the necessity of proof of intent to prevent liberation by force or intimidation.

"I will repeat the definition of 'restrain' here for you. 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him in the place where the restriction first begins or in a place to which he has been moved, without consent. This is the same definition of restrain as applied under kidnapping, and it means the same things here as I defined for you there. I am not going to repeat all that I explained to you under kidnapping, regarding the meaning of intentionally, unlawfully, interference with liberty, consent, and the lack of any required minimum time of restraint or distance of moving. All that I said with respect to those matters under kidnapping you should recall and apply under this offense of unlawful restraint in the second degree.

"Therefore, if you find that the defendant restrained [the victim] as that term has been defined for you, you should find him guilty of the lesser included offense of unlawful restraint in the second degree. If you do not find that the defendant restrained [the victim], you should find him not guilty under this first count of the information." The trial court did not include this requested instruction in its charge to the jury.

our common law. "A defendant is entitled to an instruction on a lesser [included] offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588.

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 260–61, 681 A.2d 922 (1996).

The Appellate Court concluded that the defendant was not entitled to the requested instruction because he "failed to make a proper request under the first prong of *Whistnant*." *State* v. *Corbin*, supra, 61 Conn. App. 522. The defendant argues that he satisfied all of the prongs of *Whistnant*. The state concedes that the defendant satisfied the second and third prongs of *Whistnant*, but it argues that the defendant failed to satisfy the first and fourth prongs. We agree with the Appellate Court that the defendant's claim does not meet the

first prong of *Whistnant*, and, therefore, we need not address the fourth prong.

"A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book [§ 42-18]." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 261. Practice Book § 42-18 (a) provides in relevant part: "When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. . . ." We previously have held, "in the context of a written request to charge on a lesser included offense, [the] requirement of [§ 42-18] is met only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Hall*, 213 Conn. 579, 591, 569 A.2d 534 (1990).

We agree with the well reasoned opinion of the Appellate Court that the defendant's request to charge failed to meet the requirements of Practice Book § 42-18 in several respects. First, his written request did not place the requested instruction on the lesser included offense of unlawful restraint in the first degree in a separate paragraph. Rather, he grouped together several instructions on lesser included offenses all under one paragraph. Second, although the defendant placed the instruction pertaining to the lesser included offense of unlawful restraint in the second degree in a separate paragraph, he failed to include a complete statement of the essential facts to justify the charge as requested. The defendant merely recited the relevant statutory sections pertaining to unlawful restraint in the second degree along with a comparison to the charged kidnapping statute. Those omissions made the requested

instruction confusing, which Practice Book § 42-18 seeks to prevent. "While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved . . . the ever increasing refinement of our law justifies cooperation of counsel in stating requests for jury instruction. The minor burden of cooperation imposed by [Practice Book § 42-18] is neither unreasonable nor novel." (Internal quotation marks omitted.) *State* v. *Tomasko*, supra, 238 Conn. 262.

Accordingly, we agree with the Appellate Court that the defendant failed to make a proper request under the first prong of *Whistnant*. The trial court, therefore, properly refused the defendant's request to instruct the jury on unlawful restraint in the first degree and unlawful restraint in the second degree as lesser included offenses of kidnapping in the first degree.

The judgment of the Appellate Court is reversed to the extent that it directed the trial court to render a judgment of acquittal as to one count of sexual assault in the first degree, and the case is remanded to that court with direction to affirm the judgment of the trial court. The judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.